# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

---

Chad Peterson

       Plaintiff,

vs.                                                           **DEMAND FOR JURY TRIAL**

Eide Machinery
and Equipment

       Defendant.

---

COMPLAINT FOR VIOLATION OF:

| | |
|---|---|
| COUNT ONE: | FEDERAL FAIR LABOR STANDARDS ACT, AS CODIFIED 29 U.S.C. § 201, *ET SEQ*., AS AMENDED; |
| COUNT TWO: | MINNESOTA FAIR LABOR STANDARDS ACT, MINN. STAT. § 177.21, *ET SEQ*., AS AMENDED |
| COUNT THREE | BREACH OF CONTRACT, |
| COUNT FOUR: | BREACH OF GOOD FAITH AND FAIR DEALING, |
| COUNT FIVE: | UNJUST ENRICHMENT, |
| COUNT SIX: | ACCOUNTING, |
| COUNT SEVEN: | VIOLATION OF MINN. STAT. § 181.14 SUBD. 2, *ET SEQ*., AS AMENDED |
| COUNT EIGHT: | VIOLATION OF MINN. STAT. § 181.032, AS AMENDED; AND |
| COUNT NINE: | MINNESOTA WHISTLEBLOWING MINN. STAT. §181.932, AS AMENDED; |
| COUNT TEN: | FRAUD |
| COUNT ELEVEN | FRAUDULENT CONCEALMENT |

---

## GENERAL ALLEGATIONS

1.     Plaintiff Chad Peterson is a skilled installer/repairperson who brings claims for violation of the Federal Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*, as amended; Minnesota Fair Labor Standards Act, Minn. Stat. § 177.21, *et seq*., as amended; Breach of Contract; Breach of Good Faith and Fair Dealing; Unjust Enrichment, Accounting, Violation of Minn. Stat. § 181.14, Subd. 2, as amended; Violation of Minn. Stat. §181.032, as amended; Violation of the Minnesota Whistleblower Act, Minn. Stat. § 181.932, as amended; Fraud and Fraudulent Concealment.

### JURISDICTION AND VENUE

2.     The United States District Court for the District of Minnesota has jurisdiction over this case on the basis of Federal Questions pursuant to 28 U.S.C. § 1331, as amended.

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1331 because the acts complained of herein took place in this district.  Venue is also proper pursuant to 28 U.S.C. § 1391(b) and (c) because, at all times material and relevant, Defendant Eide Machinery and Equipment transacted business in this district.

4.     This action arises under Federal Law, specifically the Fair Labor Standards Act of 1938, as amended, codified at 29 U.S.C. §201, *et seq.* as amended.

5.     The Court has jurisdiction and venue over the claims brought under the Minnesota statutory authority as well as the common law claims pursuant to 28

U.S.C. §1376, which provides for supplemental jurisdiction over state claims.

6.      Defendant Eide Machinery and Equipment is engaged in interstate commerce and has annual sales of over $500,000.

7.      Defendant Eide Machinery and Equipment has transacted business in Minnesota, and the fraud was concealed within the State of Minnesota and has also violated both federal and state law in doing so.

8.      This action also arises under Minnesota law including the Minnesota Fair Labor Standards Act and the Minnesota Whistleblower Act.

9.      This action further arose in more than one county in the state of Minnesota including Hennepin County.

10.      The Plaintiff, Chad Peterson, is a citizen of the United States and resident of the State of Minnesota from December 30, 1973, to present.  His street address is 27515 Jeffrey Avenue in the city of Chisago in the County of Chisago, Minnesota.

11.      The Defendant Eide Machinery and Equipment is a Minnesota Corporation that has a principal executive office address of 3219 North Second Street, PO Box 11397, in the City of Minneapolis, County of Hennepin, within the State of Minnesota.  Defendant does not presently have a Registered Agent.  Its Chief Executive Officer is Mitch Eide, 3219 North Second Street, PO Box 11397, Minneapolis, Minnesota 55412.

12.     Defendant is a business that sells new and used equipment and machinery, including installation, repairs, upgrades, sales, machinery repair, and installations for the construction industry.

## INTRODUCTION
## FACTS

13.     The Plaintiff is a skilled installation and repair person who worked doing installation and repairs on equipment for Defendant both within the State of Minnesota and within states other than Minnesota.

14.     While employed by Defendant, his employer required him to travel to various locations in various states to do installations and repairs.

15.     This required Plaintiff to spend hours and sometimes days away from home.  These job assignments often required extensive time on the road for travel time; for which he expected and had been promised would be compensated.

16.     While Plaintiff is an experienced and skilled repair person he is not knowledgeable about business and law, which was known to the Defendant, who preyed upon his lack of knowledge of business practices and the law.

17.     Plaintiff has lived in Minnesota for the past 47 years and expected Defendant to comply with all Minnesota laws as well as all Federal laws governing employment.

18.     Defendant represented that Plaintiff would be promptly paid all wages

due him as an employee at prearranged rates of pay, specifically $32/hour straight time and $48/hour for overtime. Plaintiff was to be paid for all time including travel time at the above rates of pay.

19.    Defendant's representations included paying for all time that Peterson had to spend for the employer, including time in traveling to assignments. This is especially important because so much of his time has been taken up travel to different states around the country to do the installations and/or repair.

20.    Defendant decided what businesses where Plaintiff would have to do work; jobs that would be available for him to work; the applicable hourly rate for each hour worked; duty to pay overtime; travel expenses or other special compensation, whether any part of the wage payment was for bonus and that it pay for insurance to cover him as its employee; and that all equipment and supplies would be supplied by the Defendant. He would not be able to either hire or substitute others to do the work but had to do it himself. Further, he was not allowed to make any separate agreement to work for another business to do the same type of work, while employed by Defendant.

21.    Chad Peterson began working as a W-2 employee for Eide Machinery and Equipment on or about August 25, 2017, with the above expectations of his employer's duty to pay him.

22.    Chad Peterson turned in his hours worked to Defendant as required. It

should be noted, that the information regarding his work hours is based on the information currently in Chad Peterson's possession. He in good faith believes more information is being concealed by Defendant. The Defendant has refused to provide Chad Peterson with a complete record of his hours and earnings.

23.     Plaintiff, to the best of his knowledge, was not properly paid for all hours worked, overtime and travel time from September 18, 2017 through the date he was wrongfully terminated, August 20, 2021, for work done by him.

24.     Chad Peterson's hourly wage varied as time went on. He started at $27.00/hour, but was not paid in full for all time spent at that rate. At the time of his wrongful termination his hourly was $32.00/hour with time and a half for overtime hours at $48.00/hour and at those rates he was not paid in full for all time spent. Plaintiff has not been properly paid for all work done, overtime, and travel time. The number of hours actually worked each week in which a violation is claimed varied from pay period to pay period.

25.     The dates of the alleged violations are approximately biweekly for the duration of Plaintiff's employment with Eide Machinery and Equipment.

26.     From August 1, 2019 through August 4, 2021, Plaintiff believes in good faith that he was not properly paid at least 70 percent of the time.

27.     Plaintiff asked for his correct regular, overtime and travel time pay in person and over the telephone several times, but was not provided with the correct

payment or even with an explanation for the amount of payment received.

28.     On or about August 5, 2021, Plaintiff made a written demand for his unpaid overtime/travel time compensation.  Defendant refused to pay the unpaid overtime/travel time due Plaintiff.

29.     It resulted in a rolling arrearage as the unpaid balance of the previous pay period would be paid first with the unpaid portion of the then current pay period being rolled into the next pay period—thus nearly, if not all of his employer's payments of wages, overtime and travel time were late and underpaid.

30.     In fact, there was never a time when Defendant paid its employee, Chad Peterson, fully for the time spent by him working for Defendant.  It now appears that that Defendant owes Chad Peterson in excess of $17,536 exclusive of penalties.

31.     Despite several requests to his employer for payment of the unpaid overtime and travel time, Defendant failed to make the payments that Chad Peterson believed were owed.  Defendants' further failed to provide to Chad Peterson any documents or records as required under Minn. Stat. §181.032.  Further, because nearly every payment of wages made by Chad Peterson's employer Defendant was not a full payment of the wages owed to Chad Peterson, Minn. Stat.  §181.14 provides that for each pay period that was late and/or that did not fully pay Chad Peterson for all wages owed, Chad Peterson is entitled to be paid an amount equal to his average daily wage for each day his wages were late up to a total of 15 days.

Further, when he resisted & reported to his employer that he believed its conduct in not paying him as required was against the law, the employer retaliated against him by wrongfully terminating his employment. The money due and owing for the failure to promptly pay Chad Peterson his wages is believed to be in excess of $75,000.

32.     Defendant has not met Minn. Stat. § 181.032 law requiring the employer to provide vital information to Plaintiff regarding wages including:

a.      The name of the employee;

b.      The hourly rate of pay (if applicable);

c       The total number of hours worked by the employee unless exempt from chapter 177;

d.      The total amount of gross pay earned by the employee during that period;

e.      A list of deductions made from the employee's pay;

f.      The net amount of pay after all deductions are made;

g.      The date on which the pay period ends; and

h.      The legal name of the employer and the operating name of the employer if different from the legal name.

33.     Plaintiff requested that Defendant comply with providing the information required by Minn. Stat. §181.032 more than once but Defendants refused to do so.  After plaintiff did so, Defendant penalized him, including by

8

making unreasonable demands upon him.  Further, the wrongful termination of Plaintiff by Defendant caused Plaintiff damage.

34.     Without this information, which is among that which under Minnesota law (Minn. Stat. § 181.032) Defendant was required to provide to Chad Peterson each pay period.  The information that Plaintiff has been able to assess indicates that Defendants failed to pay him the proper wages due, the proper rate of pay, ran arrears that incurred penalties under Minn. Stat. §181.14 and never paid him for all of the work which is due him.  Based upon his information and belief, Chad Peterson in good faith believes that he is owed in excess of $75,000.00.

**COUNT ONE**
**VIOLATION OF THE FEDERAL FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 207(A)(2)(C), ET SEQ., AS AMENDED**

35.     The Plaintiff re-alleges the previous paragraphs hereto that are incorporated herein by reference and are set forth herein.

36.     The Fair Labor Standards Act, 29 USC §207(a)(2)(C), governs the maximum hours per week that an employee engaged in interstate commerce before the employer is required to pay overtime.  Specifically, 29 U.S.C. § 207(a)(2)(C) states in pertinent part:

(a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions

(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged

in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

(2) No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, and who in such workweek is brought within the purview of this subsection by the amendments made to this chapter by the Fair Labor Standards Amendments of 1966—

(A) for a workweek longer than forty-four hours during the first year from the effective date of the Fair Labor Standards Amendments of 1966,
(B) for a workweek longer than forty-two hours during the second year from such date, or
(C) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

37.   The Fair Labor Standards Act, 29 U.S.C. §215 Prohibited Acts

provides in pertinent part that

(a) After the expiration of one hundred and twenty days from June 25, 1938, it shall be unlawful for any person—
(1) to transport, offer for transportation, ship, deliver, or sell in commerce, or to ship, deliver, or sell with knowledge that shipment or delivery or sale thereof in commerce is intended, any goods in the production of which any employee was employed in violation of section 206 or section 207 of this title, or in violation of any regulation or order of the Secretary issued under section 214 of this title; except that no provision of this chapter shall impose any liability upon any common carrier for the transportation in commerce in the regular course of its business of any goods not produced by such common carrier, and no provision of this chapter shall excuse any common carrier from its obligation to accept any goods for transportation; and except that any such transportation, offer, shipment, delivery, or sale of such goods by a purchaser who acquired them in good faith in reliance on written assurance from the producer that the goods were produced in compliance with the requirements

of this chapter, and who acquired such goods for value without notice of any such violation, shall not be deemed unlawful;

(2) to violate any of the provisions of section 206 or section 207 of this title, or any of the provisions of any regulation or order of the Secretary issued under section 214 of this title;

(3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee;

(4) to violate any of the provisions of section 212 of this title;

(5) to violate any of the provisions of section 211(c) of this title, or any regulation or order made or continued in effect under the provisions of section 211(d) of this title, or to make any statement, report, or record filed or kept pursuant to the provisions of such section or of any regulation or order thereunder, knowing such statement, report, or record to be false in a material respect.

(b) For the purposes of subsection (a)(1) proof that any employee was employed in any place of employment where goods shipped or sold in commerce were produced, within ninety days prior to the removal of the goods from such place of employment, shall be prima facie evidence that such employee was engaged in the production of such goods.

38.     As an employee, Plaintiff was required to travel to various sites around the country to install and/or repair the employers products/equipment.  This work required Plaintiff to be away from home and engaged in the employer's business for extended periods of time at various sites around the country where the employer's customers were located in order to install and/or repair the employer's product.  As a result, Plaintiff was not able to return to his home at the end of a work day and was expected to stay on the location of the installation and/or repair until the job was concluded.

39.    On occasion Plaintiff was required to travel from one out-of-state location to another without returning to his home in Minnesota.

40.    While on location doing an installation and/or repair, Plaintiff was required to stay at local lodgings so that he would be close to the work he was doing in installing and/or repairing the equipment sold to the customer by the employer. Plaintiff submitted his expenses—food, lodging, as well as any other job related expenses for reimbursement, which the employer paid.

41.    Despite having made verbal requests for an accounting of his wages for his overtime and travel time wages, such a report was not provided to Plaintiff.

42.    On or about August 5, 2021, Plaintiff made a written request for an accounting of his overtime and travel time wages.  Shortly after his request, on August 20, 2021, Plaintiff was wrongfully terminated from his employment with Defendant.

43.    The Fair Labor Standards Act, 29 USC §218c, prohibits an employer from terminating an employee for exercising his rights under the Fair Labor Standards Act, which states in pertinent part:

(a) Prohibition  No employer shall discharge or in any manner discriminate against any employee with respect to his or her compensation, terms, conditions, or other privileges of employment because the employee (or an individual acting at the request of the employee) has—

(1) received a credit under section 36B of title 26 or a subsidy under section 18071 of title 42; [1]
(2) provided, caused to be provided, or is about to provide or cause to be

provided to the employer, the Federal Government, or the attorney general of a State information relating to any violation of, or any act or omission the employee reasonably believes to be a violation of, any provision of this title [1] (or an amendment made by this title); [1]

44.     Plaintiff worked more than 40 hours each week in which a violation is claimed.  The Defendant failure to pay required time for travel as well as overtime. The alleged violations occur in approximately 72 of the 105 weeks between August 1, 2019 through August 4, 2021.  During this time period Plaintiff worked between a minimum of zero hours per week (two weeks) and 102 hours a week (once).  On average, Plaintiff worked approximately 63.19 hours per week, but was not paid for all overtime hours worked.

45.     Plaintiff was wrongfully terminated based on an illegal reason. He resisted and reported in good faith an illegal act and the Defendant penalized Plaintiff including making unreasonable demands on him and wrongfully terminated him for doing so.

46.     Plaintiff while employed by Defendant was engaged in interstate commerce as well as the production of goods for interstate commerce.  Defendant has two or more employees engaged in interstate commerce.

47.     Defendant has an annual gross volume of sale made or business done in excess of $500,000.

48.     Plaintiff is an installer or repair person and would not be qualified as a white collar or executive.

49.     Plaintiff was to be paid on an hourly wage basis and not on a salary basis.  The work done that was not compensated involved deliveries, installations and repairs that were not local but rather often far away and even out of the state of Minnesota.

50.     The principle duties Plaintiff was engaged to perform was to travel where ever assigned including out of the state of Minnesota.  Driving or traveling was a principle duty of Plaintiff.  When hired he was led to understand that among his principle duties was to travel where ever assigned.

51.     Time spent by employee that was not compensated by Defendant was hours spent by him were activities undertaken for the benefit of the his employer.  This includes travel time away from home or from one work site to another where the travel time was connected to the employer's business.  On duty waiting time which he could not use for his own purposes.  On call time during which the employee was precluded from using the time from his own purposes.  Sleeping time where the sleeping facilities are provided for the employer's benefit.

52.     Defendant did not keep proper recordkeeping including but not limited to hours per day spent by the employee, work done, calculation of the regular rate and overtime rate, and Plaintiff's travel time.

53.     The Defendants failure to pay travel time and overtime is the direct and proximate cause of damage to Plaintiff in the amount of $75,000.

## COUNT TWO
## VIOLATION OF THE MINNESOTA FAIR LABOR STANDARDS ACT
## MINN. STAT. § 177.21, *ET SEQ.* AS AMENDED

54.    The Plaintiff re-alleges the previous paragraphs hereto that are incorporated herein by reference and are set forth herein.

55.    Minnesota's Fair Labor Standards Act is codified at Minn. Stat. §177.25, which states in pertinent part:

> OVERTIME.  Subdivision 1.Compensation required.
> No employer may employ an employee for a workweek longer than 48 hours, unless the employee receives compensation for employment in excess of 48 hours in a workweek at a rate of at least 1-1/2 times the regular rate at which the employee is employed. The state of Minnesota or a political subdivision may grant time off at the rate of 1-1/2 hours for each hour worked in excess of 48 hours in a week in lieu of monetary compensation. An employer does not violate the overtime pay provisions of this section by employing any employees for a workweek in excess of 48 hours without paying the compensation for overtime employment prescribed (1) if the employee is employed under an agreement meeting the requirement of section 7(b)(2) of the Fair Labor Standards Act of 1938, as amended, or (2) if the employee is employed as a sugar beet hand laborer on a piece rate basis, provided that the regular rate of pay received per hour of work exceeds the applicable wage provided in section 177.24, subdivision 1 by at least 40 cents.

56.    Minnesota Statute §177.32 provides penalties for employers who violate the Minnesota's Fair Labor Standards Act, the penalties are as follows:

> 177.32 PENALTIES.
> Subdivision 1. Misdemeanors. An employer who does any of the following is guilty of a misdemeanor:
> (1) hinders or delays the commissioner in the performance of duties required under sections 177.21 to 177.435, 181.01 to 181.723, or 181.79;
> (2) refuses to admit the commissioner to the place of business or employment of the employer, as required by section 177.27, subdivision

1;

(3) repeatedly fails to make, keep, and preserve records as required by section 177.30;

(4) falsifies any record;

(5) refuses to make any record available, or to furnish a sworn statement of the record or any other information as required by section 177.27;

(6) repeatedly fails to post a summary of sections 177.21 to 177.44 or a copy or summary of the applicable rules as required by section 177.31;

(7) pays or agrees to pay wages at a rate less than the rate required under sections 177.21 to 177.44;

(8) refuses to allow adequate time from work as required by section 177.253; or

(9) otherwise violates any provision of sections 177.21 to 177.44.

Subd. 2.Fine.  An employer shall be fined not less than $700 nor more than $3,000 if convicted of discharging or otherwise discriminating against any employee because:

(1) the employee has complained to the employer or to the department that wages have not been paid in accordance with sections 177.21 to 177.435;

(2) the employee has instituted or will institute a proceeding under or related to sections 177.21 to 177.435; or

(3) the employee has testified or will testify in any proceeding.

177.30 KEEPING RECORDS; PENALTY.

(a) Every employer subject to sections 177.21 to 177.44 must make and keep a record of:

(1) the name, address, and occupation of each employee;

(2) the rate of pay, and the amount paid each pay period to each employee;

(3) the hours worked each day and each workweek by the employee, including for all employees paid at piece rate, the number of pieces completed at each piece rate;

(4) a list of the personnel policies provided to the employee, including the date the policies were given to the employee and a brief description of the policies;

(5) a copy of the notice provided to each employee as required by section 181.032, paragraph (d), including any written changes to the notice under section 181.032, paragraph (f);

(6) for each employer subject to sections 177.41 to 177.44, and while performing work on public works projects funded in whole or in part with state funds, the employer shall furnish under oath signed by an owner or officer of an employer to the contracting authority and the project owner

every two weeks, a certified payroll report with respect to the wages and benefits paid each employee during the preceding weeks specifying for each employee: name; identifying number; prevailing wage master job classification; hours worked each day; total hours; rate of pay; gross amount earned; each deduction for taxes; total deductions; net pay for week; dollars contributed per hour for each benefit, including name and address of administrator; benefit account number; and telephone number for health and welfare, vacation or holiday, apprenticeship training, pension, and other benefit programs; and

(7) other information the commissioner finds necessary and appropriate to enforce sections 177.21 to 177.435. The records must be kept for three years in the premises where an employee works except each employer subject to sections 177.41 to 177.44, and while performing work on public works projects funded in whole or in part with state funds, the records must be kept for three years after the contracting authority has made final payment on the public works project.

(b) All records required to be kept under paragraph (a) must be readily available for inspection by the commissioner upon demand. The records must be either kept at the place where employees are working or kept in a manner that allows the employer to comply with this paragraph within 72 hours.

(c) The commissioner may fine an employer up to $1,000 for each failure to maintain records as required by this section, and up to $5,000 for each repeated failure. This penalty is in addition to any penalties provided under section 177.32, subdivision 1. In determining the amount of a civil penalty under this subdivision, the appropriateness of such penalty to the size of the employer's business and the gravity of the violation shall be considered.

(d) If the records maintained by the employer do not provide sufficient information to determine the exact amount of back wages due an employee, the commissioner may make a determination of wages due based on available evidence.

57.     As an employee, Plaintiff was required to travel to various sites around the country to install and/or repair the employers products/equipment.  This work required Plaintiff to be away from home and engaged in the employer's business for extended periods of time at various sites around the country where the employer's customers were located in order to install and/or repair the employer's product.  As

a result, Plaintiff was not able to return to his home at the end of a work day and was expected to stay on the location of the installation and/or repair until the job was concluded.

58.    On occasion Plaintiff was required to travel from one out-of-state location to another without returning to his home in Minnesota.

59.    While on location doing an installation and/or repair, Plaintiff was required to stay at local lodgings so that he would be close to the work he was doing in installing and/or repairing the equipment sold to the customer by the employer. Plaintiff submitted his expenses—food, lodging, as well as any other job related expenses for reimbursement, which the employer paid.

60.    Despite having made verbal requests for an accounting of his wages for his overtime and travel time wages, such a report was not provided to Plaintiff.

61.    On or about August 5, 2021, Plaintiff made a written request for an accounting of his overtime and travel time wages.  Shortly after his request, on August 20, 2021, Plaintiff was wrongfully terminated from his employment with Defendant.

62.    Plaintiff was wrongfully terminated based on an illegal reason for having reported an illegal act and the defendant wrongfully terminated him for doing so.

63.    Defendant by its wrongful termination violated the Minnesota

whistleblower act, Minn. Stat § 181.932.

64.    Defendant wrongfully fired, threatened, and penalized "plaintiff employee regarding compensation, terms, conditions, location, or privileges of employment because he:

- reported a violation of the federal and state law to his employer;

- refused to be victimized by the employer's failure to follow prevailing law;

- plaintiff had a right to wages and all of the other benefits promptly, this was not done by defendant. Instead the employer refused to pay all wages and benefits due to plaintiff.

65.    As a result of the foregoing wrongful termination plaintiff has been damaged. The wrongful termination is the direct and proximate cause of damages to Plaintiff in excess of $75,000

66.    Plaintiff worked more than 48 hours each week in which a violation is claimed.  The Defendant's failure to pay required time for travel as well as overtime. The alleged violations occurred in approximately 48 of the work weeks between August 1, 2019 through August 4, 2021.  During this time period Plaintiff worked between a minimum of zero hours per week (two weeks) and 102 hours a week (once).  On average, Plaintiff worked approximately 63.19 hours per week, but was not paid for all overtime hours worked.

67.    Plaintiff while employed by Defendant was engaged in interstate commerce as well as the production of goods for interstate commerce.  Defendant has two or more employees engaged in interstate commerce.

68.    Defendant has an annual gross volume of sale made or business done in excess of $500,000.

69.    Plaintiff is an installer or repair person and would not be qualified as a white collar or executive.

70.    Plaintiff was to be paid on an hourly wage basis and not on a salary basis.  The work done that was not compensated involved deliveries, installations and repairs that were not local but rather often far away and even out of the state of Minnesota.

71.    The principle duties Plaintiff was engaged to perform was to travel where ever assigned including out of the state of Minnesota.  Driving or traveling was a principle duty of Plaintiff.  When hired he was led to understand that among his principle duties was to travel wherever assigned, with the understanding that he would be paid for doing so.

72.    Time spent by employee that was not compensated by Defendant was hours spent by him were activities undertaken for the benefit of the his employer. This includes travel time away from home or from one work site to another where the travel time was connected to the employer's business; on duty waiting time

which he could not use for his own purposes; on call time during which the employee was precluded from using the time from his own purposes; and sleeping time where the sleeping facilities are provided for the employer's benefit.

73.    Defendant did not keep proper recordkeeping including but not limited to hours per day spent by the employee, work done, calculation of the regular rate and overtime rate, travel time.

74.    The Defendants failure to pay travel time and overtime is the direct and proximate cause of damage to Plaintiff in the amount of $75,000.

## COUNT THREE
## BREACH OF CONTRACT

75.    The Plaintiff re-alleges the previous paragraphs hereto that are incorporated herein by reference and are set forth herein.

76.    A contract was formed based on the verbal offers of Defendant to Plaintiff.   This offer was accepted. Plaintiff has met all requirements and has rendered hours of service as consideration, but the Defendant has not met its promises under the agreement and is in breach by not paying him for all overtime and travel time worked in the approximate amount of $17,536, exclusive of penalties.

77.    The consideration being payment of money by Defendants and installation and repair services to be performed by Plaintiff was consideration in return.  The period of the contract was unlimited.  The contract started in August of

2017.

78.    Defendant represented an amount of money to be paid to Plaintiff for services performed by him as its employee starting in August of 2017. The representations by Defendant to Plaintiff started in August of 2017, constituted an offer which was accepted by Plaintiff in August of 2017. There was no end date for the contract. The rate of pay was to be $32 per hour and $48 per hour for holidays and for overtime. Travel time was to be paid according to the same rate as working hours since the travel time was needed to do the assigned jobs given by Defendant to Plaintiff. It was understood by both parties that Plaintiff's time traveling was done as part of his job.

79.    Payments were to be promptly made by Defendant to Plaintiff. This was not done for all of the wages that were due and owing. Defendant has not paid for all services performed by Plaintiff for at least the past two years. Further, it has not paid him the proper wage owed to him, underpaid him so that it ran arrearages on wages due him that went unpaid, failed after demand to pay penalties due under Minnesota Law and still has money that is due Plaintiff by Defendants and remains unpaid that Plaintiff in good faith believes is in excess of seventy-five thousand dollars.

80.    The consideration was clearly laid out that Plaintiff would be paid for all services he rendered and that the Defendant would get the benefit of those

services and be paid by the truss plants for the services that the Plaintiff had performed.

81.     Plaintiff has at all times and in all descriptions, conditions and agreements stated in said contract performed all of the services and in the manner thereof.  Plaintiff specified and properly fulfilled his requirements, but the Defendant has not.  Plaintiff has demanded payment from Defendants but it has refused to pay him.

82.     Defendant has failed and refused, and still fails and refuses to perform said contract on its part.

83.     By reason thereof Plaintiff has been damaged in an approximate sum of which is believed by Plaintiff to exceed $75,000; the exact sum of which is currently unknown and of which only a part of has been paid by Defendant.

84.     The Plaintiff has requested payment from Defendant but it has not complied.

85.     The Defendant breached the contract and have failed to make payments as required.

86.     The Defendant's breach of contract is the direct and proximate cause of loss to Plaintiff.

87.     Plaintiff has been damaged in excess of $75,000.

## COUNT FOUR
## BREACH OF GOOD FAITH AND FAIR DEALING

88.     The Plaintiff re-alleges the previous paragraphs hereto that are incorporated herein by reference and are set forth herein.

89.     Defendant spoke with Plaintiff before he ever accepted the Defendants' offer.  Eide intentionally made false representations to Plaintiff as to how much he would earn as wages as an employee.  Defendant promised Plaintiff repeatedly that he would be paid per hour for all services he would perform.  There were false statements made by Defendant and again later after the contract by Defendant to Plaintiff.  Defendant used untrue and unfair tactics by offering one amount of pay, but later paying less when it paid at all.  It used bait and switch tactics, false representations and active concealment of material information that damaged Plaintiff.

90.     The Plaintiff and Defendant entered into a contract for Plaintiff to provide repair and installation services to assigned by Defendant.  The rate of pay was to be $32 per hour and $48 per hour for holidays and for overtime.  Plaintiff was to be paid for all hours worked including travel time.

91.     Defendant by its false promises assured the Plaintiff that it was going to look out for his best interests and enhance his earning power by giving him good paying jobs and paying him in a timely manner.

92.     Payments were to be made by Defendant were to be paid in a prompt manner by bi-weekly paycheck.

93.     The Defendant breached the contract and has failed to make all of the payments for wages due and owing as required by the contract between the parties.

94.     Despite requests for payment by Plaintiff, the Defendant has not complied but put him off showing that it has not acted in good faith and/or dealt with him in a fair manner.  There has been a violation of good faith and fair dealing by Defendant in their contract with the Plaintiff.  Defendant has made intentional, knowledgeable with scienter false representations to Plaintiff knowingly and intentionally never intending to pay him for all time spent working for it. Defendant baited and switched Plaintiff.  It baited him with a promise of payment for all time he spent as an employee and then after he performed work for them taking considerable time, effort and inconvenience switched to saying that certain work done on its behalf such as travel time would not be paid.

95.     The Defendants' failure to act in good faith and deal fairly is the direct and proximate cause of loss to Plaintiff.

96.     The Plaintiff has been damaged in excess of $75,000.

## COUNT FIVE
### UNJUST ENRICHMENT WAS RECEIVED BY DEFENDANT

97.     The Plaintiff re-alleges the previous paragraphs hereto that are incorporated herein by reference and are set forth herein.

98.     The Plaintiff and Defendants Defendant entered into An agreement for Plaintiff to provide services to customers of Defendant, which would require him to

travel and be away from home.  The Defendant benefited from the  services provided by the Plaintiff.

99.    Defendant assured the Plaintiff that it was going to look out for his best interests and enhance his earning power by giving him good paying jobs and paying him in a timely manner.

100.    Payments were to be made by Defendant to Plaintiff in a prompt manner via bi-weekly paycheck.  This was not done.  Defendant did not honor its obligation and has failed to make all of the payments as required leaving Defendant with all the advantages given by Plaintiff in time and effort to Defendant but no compensation as promised by Defendant.

101.    Defendant was unjustly enriched by being paid by the customers and by not paying the Plaintiff for services that he performed.

102.    The failure of the Defendants to pay Plaintiff for the services that he performed that benefited them is the direct and proximate cause of loss to the Plaintiff.

103.    The Plaintiff has been damaged in excess of $75,000.

### COUNT SIX
#### ACCOUNTING

104.    The Plaintiff re-alleges the previous paragraphs hereto that are incorporated herein by reference and are set forth herein.

105.    The Plaintiff and Defendant entered into a contract for Plaintiff to

provide services for Defendant as set forth above.

106.   Defendant assured the Plaintiff that it was going to look out for his best interests and enhance his earning power by giving him good paying jobs and paying him in a timely manner.  A contract was formed based on the offers of payment made through communications..   The consideration by Defendant was the  payment of money to Chad Peterson for time spent doing jobs for Defendant. The contract started in August of 2017.

107.  Payments were to be made by Defendant to Plaintiff in a prompt manner via bi-weekly paycheck.  This was not done for all of the payments that the Plaintiff earned.

108.   The Defendant breached the contract and have failed to make all of the payments for wages due and owing as required by the contract between the parties.

109.   The Defendant's breach of contract is the direct and proximate cause of loss to Plaintiff.

110.   The failure of Defendant to properly explain how it handled payments and account for payments allegedly made and to be made makes it unclear as to the exact amount due and owing to the Plaintiff.   Defendant refused to supply information on all of the hours that Plaintiff performed services nor will they supply the accounting for payments due to.   Defendant also refused to provide actual payment to Plaintiff for all of the services that he performed.

111.   Defendant did not pay Plaintiff regularly as promised and when he was paid it did not cover accurately the amount due and all unpaid balance of wages due and owing.  Plaintiff in good faith believes that:

a.   He was not paid at the agreed upon rates;

b.   That all payments were not made that were due to him;

c.   That the payments that were made were only partial payments;

d.   That there was no accounting for time and a half, double time and/or bonuses as promised;

e.   That he was not paid in a timely manner;

f.   That he was not provided payment advices detailing the locations worked;

g.   The number of hours worked at each location;

h.   The rate of pay for each location for the hours worked;

i.   The number of hours worked that were paid at time and a half and/or double time;

j.   Payment for all travel time.

112.   Despite requests by Plaintiff the Defendant did not pay Chad Peterson for all of the hours he worked nor did the customers to which he was assigned.  Chad Peterson attempted to get paid from Defendant, but he was put off by it.  The information he did get was inconsistent with past understandings, confusing and

contradicted the idea that he was properly paid as well as the fact that they had no intention of addressing the unpaid money due and owing to him.

113.   There may be additional payments as well that Eide failed to provide to Chad Peterson.  Eide should provide a full accounting including all records required by law and related to the issues of Chad Peterson's claims.

114.   Defendant has not broken out the locations worked; the hours worked at each location; time taken for travel, the hourly rate to be paid for each hour worked at each location; whether the hours worked were to be paid at time and a half and/or double time; and what, if any amount was to be paid as a bonus.  The records seemingly show that Defendant did not always pay Chad Peterson for all work he did at a particular time, but rather made just a partial payment so that money was still due and owing for work performed after the payment had been made.  Because Defendant as the hiring company did not state the rate of pay for the hours worked; the hours worked; the locations worked; and whether any of the amount paid was bonus money, it is and was difficult to fully assess the accuracy of the payments. Plaintiff made demands for explanations and payments but no proper answer and/or documentation was supplied by Defendants.

115.   As the employing company, Eide would be expected to provide the necessary information and payments required by the IRS and Minnesota revenue. The employing company is to provide information to Chad Peterson regarding

wages including: the hourly rate of pay (if applicable); the total number of hours worked by the employee, the total amount of gross pay earned by the employee during that period; the date on which the pay period ends; and the legal name of the employing company and the operating name of the employing company if different from the legal name.  This was not done by Defendants despite knowing that it should be done by it.

116.  Defendant's failure to provide accurate records to Plaintiff make it difficult if not impossible to fully calculate with certainty all of the money it owes him at this time.  Plaintiff in good faith believes that the information currently available to him is not complete and that he worked more hours and more days than what was provided by Eide.

117.  At a minimum, Defendant should provide for Chad Peterson an accounting that includes:

    a.    The base hourly rate of pay with a clear explanation of how it was derived and connect that with the specific employment offer it made to Chad Peterson for the service he rendered for each truss plant for which Chad Peterson provided service;

    b.    whether he was to be paid at time and a half and/or double time; and whether Chad Peterson was to be paid a bonus for picking up certain jobs.

    c.    This should include regular hourly pay rate, overtime earnings, total wages paid each pay period, date of payment and the pay period covered by the payment.

    d.    Copies of ledger sheets showing the exact accounting used by Eide in keeping track of payments to Chad Peterson; Chad Peterson's rates of

pay; the total number of hours worked by Chad Peterson unless he is exempt from Minn. Stat. s Chapter 177;

e.     The total amount of gross pay earned by Chad Peterson during that period;

f.     The date on which the pay period begins and ends; and

g.     The legal name of the hiring company and the operating name of the hiring company if different from the legal name.

h.     Copies of all correspondence and other communications between Chad Peterson and Eide or its agents.

118.  The actual amount of wages plus penalties due and owing Plaintiff in good faith believes exceeds $75,000.  Therefore, this amount together with interest and penalties thereon is past due and unpaid as of the date of this record.

119.  It has become necessary for Plaintiff in attempting to collect on this account to employ the undersigned counsel to file the suit therefore, Plaintiff should be entitled to reasonable attorney's fees in the sum for having to bring this suit.

120.  Plaintiff requests an accounting for all payments made and due and owing to him for the services that he performed for each business that he serviced for Defendant.

121.  The Plaintiff requests the court order an accounting which includes a full audit including a full explanation which includes records of all of the hours he performed services for Defendant, as well as all supporting documentation as set forth earlier in paragraph    above along with payments due from Defendant to Plaintiff.

122.   Plaintiff has been damaged in excess of $75,000.

## COUNT SEVEN
## VIOLATION OF MINN. STAT. §181.14, SUBD. 2, AS AMENDED,

123.   The Plaintiff re-alleges the previous paragraphs hereto that are incorporated herein by reference and are set forth herein.

124.   The Plaintiff and Defendant entered into a contract for Plaintiff as an employee to provide installation and repair services to assigned customers both in and outside of the State of Minnesota.  The rate of pay was to be $32 per hour and $48 per hour for holidays and overtime.  Plaintiff was to be paid promptly via paycheck on an every two week basis.

125.   Defendant assured the Plaintiff that it was going to look out for his best interests and enhance his earning power by giving him good paying jobs and paying him in a timely manner.

126.   Payments were to be made by Defendants Defendant to Plaintiff in a prompt manner via biweekly paycheck.  This was not done for all of the payments for wages due and owing which were earned by the Plaintiff.

127.   The Plaintiff worked for Defendant from August of 2017 to August 20, 2021.

128.   Plaintiff demanded payment from Defendant but it has refused to pay him.  Defendants have failed to pay Plaintiff for all of the services.  Payments are

long said overdue.

129.   Defendant still has not paid Plaintiff all of his wages that are due and owing.

130.   Plaintiff properly demanded that Defendant pay him wages for all hours worked, overtime and travel time, but Defendant did not do so.  The Defendant has failed to pay Plaintiff on the next regularly scheduled payday.

131.   To the date of this complaint, the Defendants Defendant still have not made payments due to the Plaintiff for over $17,536 plus penalties.

132.   As an employee of Defendant Minn. Stat.  181.14, Subd. 2 applies and Chad Peterson is entitled to damages equal to the amount of his average daily wage for each day his wages are late up to 15 days.  Further, when he was paid his wages, they were not for the full amount earned.  Further, each subsequent wage payment was for less than the arrears from the previous pay period plus the current wages due. Following the first in-first out rule, Defendant has never completely retired the previous pay periods earned-but-unpaid wages and thus had a rolling arrearage that meant ALL of Chad Peterson's wages were late and the penalties under 181.14, Subd. 2 apply to each pay period.  The late and under payments continued in every month that Chad Peterson was employed by Defendant.

133.   For the majority of the time that Chad Peterson was employed by Defendant Chad Peterson was seldom paid up in full including the arears.  Chad

Peterson regularly requested that he be paid, yet None Line continued to pay him late and to under pay him.

134.   Starting with his first paycheck, Defendant was in arrears and subject to the penalty under 181.14, Subd 2.  For example, during the week of March 11, 2021, Plaintiff worked a total of 74 hours, but was only paid his regular hourly wage of $32/hour and was not paid for the overtime he worked, which was all time worked over the regular 40 hour work week.  Chad Peterson's average daily wage for the week of March 11, 2021 should have been $182.86 plus 34 hours of overtime at an average daily amount of $233.14 for a combined total of $416/day.   Multiplied by fifteen days—the penalty is at least $6,240 for that pay period alone.  When added together with the penalties for each late and under payment that was received, the total of penalties comes to well over $75,000.

## COUNT EIGHT
### VIOLATION OF MINN. STAT. § 181.032 AS AMENDED

135.   The Plaintiff re-alleges the previous paragraphs hereto that are incorporated herein by reference and are set forth herein.

136.   Defendant violated Minn. Stat. §181.032 by failing to provide to Chad Peterson a wage payment advice compliant with Minnesota law §181.032 the payment advices only had the amount that had been deposited to his account, they did not include, at a minimum:

a.    The name of the employee;

b.    The hourly rate of pay (if applicable);

c     The total number of hours worked by the employee unless exempt from chapter 177;

d.    The total amount of gross pay earned by the employee during that period;

e.    A list of deductions made from the employee's pay;

f.    The net amount of pay after all deductions are made;

g.    The date on which the pay period ends; and

h.    The legal name of the employer and the operating name of the employer if different from the legal name.

137.   Because of the foregoing, Chad Peterson does not have in his possession detailed records of the dates, locations, hours worked and rate of pay for hours worked.  He has previously requested an accounting, but Defendant has not provided the information—even after the litigation began Defendant did not provide the requested information.

138.   Despite requests for payment and explanation of the handling of payments, the Defendant has refused to audit, adjust and properly submit payments due to Plaintiff.  Defendant by its acts and non-acts have violated Minn. Stat. §181.14.

139.   Plaintiff has been damaged in excess of $75,000.

## COUNT NINE
## MINNESOTA WHISTLEBLOWING STATUE
## MINN. STAT. §181.932, AS AMENDED

140.    The Plaintiff re-alleges the previous paragraphs hereto that are incorporated herein by reference and are set forth herein.

141.    Minnesota Statute §181.932, the Minnesota Whistleblower Statute provides employees protection from retaliation when disclosing information. Specifically the statute states in pertinent part:

Subdivision 1. Prohibited action. An employer shall not discharge, discipline, threaten, otherwise **discriminate** against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1)    the employee, or a person acting on behalf of an employee, in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official;

(2)    the employee is requested by a public body or office to participate in an investigation, hearing, inquiry;

(3)    the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason;

(4)    the employee, in good faith, reports a situation in which the quality of health care services provided by a health care facility, organization, or health care provider violates a standard established by federal or state law or a professionally recognized national clinical or ethical standard and potentially places the public at risk of harm;

(5)    a public employee communicates the findings of a scientific or technical study that the employee, in good faith, believes to be truthful and accurate, including reports to a governmental body or law enforcement official; or

(6)    an employee in the classified service of state government communicates information that the employee, in good faith, believes to be truthful and accurate, and that relates to state

(i) a legislator or the legislative auditor; or
(ii) a constitutional officer.

The disclosures protected pursuant to this section do not authorize the disclosure of data otherwise protected by law.

142.  Plaintiff is a blue-collar worker who worked an average of approximately 63.19 hours each week from August 1, 2019 through August 4, 2021. The Defendant failure to pay required time for travel as well as overtime.  The alleged violations occurred in approximately 48 of the 105 weeks between August 1, 2019 and August 5, 2021.

143.   Plaintiff while employed by Defendant was engaged in interstate commerce as well as the production of foods for interstate commerce.  Defendant has two or more employees engaged in interstate commerce.

144.   Defendant has an annual gross volume of sale made or business done in excess of $500,000.

145.   Plaintiff is an installer or repair person and would not be qualified as a white collar or executive.

146.   Plaintiff was to be paid a wage and not on a salary basis.  The work done that was not compensated involved deliveries, installations and repairs that were not local but rather often far away and even out of the state of Minnesota.

147.   The principle duties Plaintiff was engaged to perform was to travel wherever assigned including out of the state of Minnesota.  Driving or traveling was a principle duty of Plaintiff.  When hired he was led to understand that among his principle duties was to travel wherever assigned.

148.   Time spent by employee that was not compensated by Defendant was hours spent by him were activities undertaken for the benefit of the his employer. This includes travel time away from home or from one work site to another where the travel time was connected to the employers business; on duty waiting time which he could not use for his own purposes;  on call time during which the employee was precluded from using the time from his own purposes; and sleeping time where the sleeping facilities are provided for the employer's benefit.

149.   Defendant did not keep proper recordkeeping including but not limited to hours per day spent by the employee, work done, calculation of the regular rate and overtime rate, travel time.

150.   Although Plaintiff had asked about the employer's failure to properly pay Plaintiff verbally many times.  On August 5, 2021, he made the request in writing.

151.  Plaintiff reported to the Defendant that it was breaking the law including not paying wages due and travel time.  Further it promptly penalized him and responded by wrongfully terminating his employment on August 20, 2021,

Plaintiff was wrongfully terminated from his employment.

152.   The Defendants failure to pay travel time and overtime is the direct and proximate damage of Plaintiff in the amount of $75,000.

**COUNT TEN**
**FRAUD**

153.   The Plaintiff re-alleges the previous paragraphs hereto that are incorporated herein by reference and are set forth herein.

**BASIC FACTS LEADING TO FRAUD BY DEFENDANTS**

154.   The Plaintiff is a skilled installation and repair person who worked doing installation and repairs on equipment both within the State of Minnesota and within states other than Minnesota.

155.   While employed by Defendant, his employer required him to travel to various locations in various states to do installations and repairs.

156.   This required Plaintiff to spend hours and sometimes days away from home.  These job assignments often required extensive time on the road for travel time.

157.   While Plaintiff is an experienced and skilled repair person he is not knowledgeable about business and law, which was known to the Defendant, who preyed upon his lack of knowledge of business practices and the law.

158.   Defendant represented that Plaintiff would be promptly paid all wages due him as an employee at prearranged rates of pay.  In the beginning he was paid

$27.00/hour for straight time with time and a half for overtime.  His straight time and time and a half rate increased over time to $32/hour straight time and $48/hour for overtime when he was wrongfully terminated.  Plaintiff was to be paid for all time including travel time at the above rates of pay.

159.   Defendant's representations included paying for all time that Peterson had to spend for the employer, including time in traveling to assignments.  This is especially important because so much of his time has been taken up travel to different states around the country to do the installations and/or repair.

160.   Defendant decided what businesses where Plaintiff would have to do work; jobs that would be available for him to work; the applicable hourly rate for each hour worked; duty to pay overtime; travel expenses or other special compensation, whether any part of the wage payment was for bonus and that it pay for insurance to cover him as its employee; and that all equipment and supplies would be supplied by the Defendant.  He would not be able to either hire or substitute others to do the work but had to do it himself.  Further, he was not allowed to make any separate agreement to work for another business to do the same type of work, while employed by Defendant.

161.   Chad Peterson began working as a W-2 employee for Eide Machinery and Equipment on or about August 25, 2017.

162.   Chad Peterson turned in his hours worked to Defendant as required.  It

should be noted, that the information regarding his work hours is based on the information currently in Chad Peterson's possession. He in good faith believes more information is being concealed by Defendant. The Defendant has refused to provide Chad Peterson with a complete record of his hours and earnings.

163.   Defendant represented an amount of money to be paid to Plaintiff for services performed by him as its employee starting in August of 2017. The representations by Defendant to Plaintiff started in August of 2017, constituted a representation which was induced Plaintiff to accept employment in August of 2017. The rate of pay was to be $32 per hour and $48 per hour for holidays and for overtime. Travel time was to be paid according to the same rate as working hours since the travel time was needed to do the assigned jobs given by Defendant to Plaintiff. It was understood by both parties that Plaintiff's time traveling was done as part of his job.

164.   Payments were to be promptly made by Defendant to Plaintiff. This was not done for all of the wages that were due and owing. Defendant has not paid for all services performed by Plaintiff for at least the past two years. Further, it has not paid him the proper wage owed to him, underpaid him so that it ran arrearages on wages due him that went unpaid, failed after demand to pay penalties due under Minnesota Law and still has money that is due Plaintiff by Defendants and remains unpaid that Plaintiff in good faith believes is in excess of seventy-five thousand

dollars.

165.   The consideration was clearly laid out that Plaintiff would be paid for all services he rendered and that the Defendant would get the benefit of those services and be paid by the truss plants for the services that the Plaintiff had performed.

166.   Plaintiff has at all times and in all descriptions, conditions and agreements stated in said contract performed all of the services and in the manner thereof.  Plaintiff specified and properly fulfilled his requirements, but the Defendant has not honored the forgoing representations.  Plaintiff has demanded payment from Defendants but it has refused to pay him.

167.   Defendant has failed and refused, and still fails and refuses to perform honor the forgoing representations.

168.   By reason thereof Plaintiff has been damaged in an approximate sum of which is believed by Plaintiff to exceed $75,000; the exact sum of which is currently unknown and of which only a part of has been paid by Defendant.

169.   The Plaintiff has requested payment from Defendant but it has not complied.

170.   The Defendant failed to honor its representations and have failed to make payments as required.

171.   The defendant in doing the forgoing acts did make intentional knowing

with scienter false misrepresentations of past or present material facts; (2) Representations that Defendant made to Plaintiff were knowledgably asserted that were false by it; (3) The Defendants false representation were done with an intention to induce the plaintiff to act or to justify him to act; (4) the plaintiff was induced to act and justified in acting in reliance on the representations; and (5) the plaintiff suffered damage proximately caused by the misrepresentation.

172.   The Defendant's fraud is the direct and proximate cause of loss to Plaintiff.

173.   Plaintiff was not properly paid for all hours worked, overtime and travel time from September 18, 2017 through the date he was terminated, August 5, 2021, for work done by him.

174.   Chad Peterson's hourly wage was $32.00/hour with time and a half for overtime hours at $48.00/hour.  Plaintiff has not been properly paid for all work done, overtime, and travel time.  The number of hours actually worked each week in which a violation is claimed varied from pay period to pay period.

175.   The dates of the alleged violations are approximately biweekly for the duration of Plaintiff's employment with Eide Machinery and Equipment.

176.   From August 1, 2019 through August 4, 2021, Plaintiff believes in good faith that he was not properly paid at least 70 percent of the time.

177.   Plaintiff asked for his correct regular, overtime and travel time pay in

person and over the telephone several times, but was not provided with the correct payment or even with an explanation for the amount of payment received.

178.   On or about August 5, 2021, Plaintiff made a written demand for his unpaid overtime/travel time compensation.  Defendant refused to pay the unpaid overtime/travel time due Plaintiff.

179.   It resulted in a rolling arrearage as the unpaid balance of the previous pay period would be paid first with the unpaid portion of the then current pay period being rolled into the next pay period—thus nearly, if not all of his employer's payments of wages, overtime and travel time were late and underpaid.

180.   In fact, there was never a time when Defendant paid its employee, Chad Peterson, fully for the time spent by him working for Defendant.  It now appears that that Defendant owes Chad Peterson in excess of $17,536 exclusive of penalties.

181.   Despite several requests to his employer for payment of the unpaid overtime and travel time, Defendant failed to make the payments that Chad Peterson believed were owed.  Defendants' further failed to provide to Chad Peterson any documents or records as required under Minn. Stat. §181.032.  Further, because nearly every payment of wages made by Chad Peterson's employer Defendant was not a full payment of the wages owed to Chad Peterson, Minn. Stat.  §181.14 provides that for each pay period that was late and/or that did not fully pay Chad Peterson for all wages owed, Chad Peterson is entitled to be paid an amount equal

to his average daily wage for each day his wages were late up to a total of 15 days. The money due and owing for the failure to promptly pay Chad Peterson his wages is believed to be in excess of $75,000.

182. Defendant intentionally, knowingly, and with scienter took advantage of Plaintiff's lack of knowledge and vulnerability in formulating and executing a plan to defraud him from the inducement to get him to take the job into present.

### PLAINTIFF RESPONDS TO DEFENDANT'S REPRESENTATIONS

183. Plaintiff a skilled work person accepted the job based on the false representations that he would be paid for his time working, overtime and travel time. This promise was given by Defendant to get him to work and again at time after he started to work for Defendant.

### PLAINTIFF RELIED UPON DEFENDANTS REPRESENTATIONS

184. Plaintiff, based upon Defendants foregoing false representations, was induced to work as an employee for Defendants and accepted employment with them. Plaintiff turned in his hours worked to for Defendant as required. It should be noted, that the information regarding his work hours is based on the information currently in Plaintiff's possession. Defendant has concealed and has refused to provide Plaintiff with a complete record of his hours and earnings; nor was Plaintiff able to get this information. If Plaintiff had known the truth he would not have worked for Defendant. The Defendant's false representations made him act in a way

he would not have done but for Defendant's intentional, knowing and with scienter false representations. Defendants made false representations to Plaintiff having to do with a past or present facts that were material and susceptible of knowledge. Defendants knew these intentional, knowing with scienter representations to be false with the intent to induce Plaintiff to act. Plaintiff was induced to act because of these intentional, knowing with scienter false representations that were made by Defendant. In reliance in the intentional, knowing with scienter false representations he suffered damages that are attributable to the false representations of the Defendant.

185.   The Defendant used bait and switch tactics by offering one amount of pay, but later intentionally concealing from him material information so as to trick him into getting less money than was due to be paid to him by Defendant.

## DEFENDANT DID NOT PAY PLAINTIFF AS IT REPRESENTED

186.   In August of 2021 Plaintiff reported that he in good faith believed Defendant was breaking the law by not paying him what was promised and due under the law. Defendant did not pay him but in prompt order terminated his employment. The Defendant did not pay Plaintiff as he expected.

187.   Defendants committed fraud by falsely, intentionally, knowingly, and with scienter promising to hire Plaintiff as an employee and pay Plaintiff certain hourly rates and then did not pay him the rates represented to him. Further, they

concealed Plaintiff's employment records and accounting of his wages so he would not understand the real earnings that should have been paid to him.

188.  Defendants' false representations as to Plaintiff being an employee and payment to him was material and influenced his decision to work for Defendants.  It was knowable to Defendant both the amount it intended to pay and that Plaintiff would rely upon its representations. They were present material facts. Defendant knew the representations they made to Plaintiff were false and intended for Plaintiff to rely upon them.  Plaintiff did rely upon these representations, was justified in doing so, and as a direct result he incurred financial damage.  He justifiably relied upon these representations believing Defendant.

189.  Plaintiff in good faith believes factors showing Defendant's fraud include:

- Defendant's representations proved to be untrue and Defendant would have known these representations were untrue when made.  The representations were material and of a past or present fact that was susceptible of knowledge;

- He was not paid at the promised rates;

- That all payments were not made that were due to him;

- That the payments that were made were only partial payments that did not include all work done including travel time and penalties to be

paid pursuant to law;

- That there was no accounting for time he worked and penalties due to be paid to him by it.

- That he was not paid in a timely manner;

- That he was not provided payment advices detailing the locations worked;

- The number of hours worked at each location was not accounted for by Defendant;

- The rate of pay for each location for the hours worked was not accounted for by Defendants;

- The number of hours worked that were paid for work hours, overtime or travel time were not accounted for by Defendant;

190.  Plaintiff in good faith believes that the information currently available to him is not complete and that he worked more hours and more days than what was provided by Defendant.  If a hiring company does not pay a person it employs such as Plaintiff in a timely manner, the person who was employed is entitled to make a demand for payment and can further be entitled to an additional amount to be paid by the hiring company.  Plaintiff made such a demand but Defendant did not comply but rather penalized him including terminating his employment.

191.  The Plaintiff would not have acted the way he did but for Defendant's

intentional, false representations and related fraud.  Only in the summer of 2021 Plaintiff realized that he was the victim of fraud by Defendant.

192.   Defendant's fraud included:

- Defendant's representations proved to be untrue and Defendant would have known these representations were untrue when made.  The representations were material and of a past or present fact that was susceptible of knowledge;

- He was not paid at the promised rates;

- That all payments were not made that were due to him;

- That the payments that were made were only partial payments;

- That there was no accounting for time and a half, double time and/or bonuses as promised;

- That he was not paid in a timely manner;

- That he was not provided payment advices detailing the locations worked;

- The number of hours worked at each location was not accounted for by Defendant;

- The rate of pay for each location for the hours worked was not accounted for by Defendant;

- The number of hours worked that were paid at time and a half and/or

double time were not accounted for by Defendant;

- The wages for travel time paid, if any, for that pay period was not accounted for by Defendants.

193. The clear facts as set forth above show:

- There were representations by Defendant about the job and how and how much he would be paid including how accounting would be handled, all time away from home, overtime and travel;

- that these representations were false;

- having to do with a past or present fact,

- that the representations made to Plaintiff were material;

- and that the representations by Defendant were susceptible to knowledge by the Defendant;

- and the Defendant knew these representations to be false

- the representations by Defendant were made with the intent to induce the Plaintiff to act;

- and the Plaintiff was induced to act;

- in reliance on the representation the Plaintiff did act taking the job and continuing on the job;

- and he suffered damages;

- the damages were attributable to the misrepresentations made by

Defendant to him.

194.   The intentional, knowledgeable and with scienter foregoing acts of fraud by Defendant were the direct and proximate cause of damage to Plaintiff.

195.   Wherefore, the Plaintiff believes in good faith that he has been damaged in excess of $75,000.

**COUNT ELEVEN**
**FRAUDULENT CONCEALMENT**

**DEFENDANT CONCEALED INFORMATION**
**TO KEEP PLAINTIFF FROM DISCOVERING ITS FRAUD**

196.   The Plaintiff re-alleges the previous paragraphs hereto that are incorporated herein by reference and are set forth herein.

197.   The Defendant engaged in fraudulent concealment.  (1) Defendant concealed a material fact; (2) the fact was within the Defendant's knowledge; (3) the Defendant knew that the Defendant was going to rely on this nondisclosure on the presumption that the fact does not exist; and (4) the Defendant had a legal/equitable duty to communicate the fact. (5) The defendant had a duty to communicate the information under prevailing law, a confidential or fiduciary duty relationship exists and/or disclosure is necessary to clarify misleading information already disclosed, the Defendant has "special knowledge" of material facts to which the defendant does not have access.

198.   Defendant spoke with Plaintiff before he ever accepted the Defendants'

offer.  Eide made false representations to Plaintiff as to how much he would earn as wages as an employee and then subsequently concealed information related to those payments from Plaintiff so he would not get paid what was due him.  Defendant represented to Plaintiff repeatedly that he would be paid per hour for all services he would perform.  There was fraud in the inducement by Defendant and again later in the concealment of material information from Plaintiff as to money due to him from Defendant.

199.  Defendant represented to Plaintiff that it would pay him to provide repair and installation services to assigned by Defendant.  The rate of pay started at $27 per hour with time and a half for overtime hours.  Over time the Plaintiff's hourly increased to $32 per hour for straight time and $48 per hour for holidays and for overtime.  Plaintiff was to be paid for all hours worked including travel time, but Defendant concealed from him information related to what was owed to him by Defendant.

200.  Defendant by its fraudulent concealment tricked him into working without being paid for all that was due to him. The Defendant used bait and switch fraud tactics to trick Plaintiff while fraudulently concealing the truth from him.

201.  Payments to be made by Defendant were to be paid in a prompt manner by bi-weekly paycheck, but the information given to him was not all that he was supposed to receive by law.  Material information was concealed by Defendant

including what was required under the Fair Labor Standards Acts under both federal and state law and other applicable statues in Minnesota.

202.   Defendant's fraudulently concealed wage; hours worked; and rate of pay information, as well as other information required to be provided Plaintiff intentionally, knowingly and with scienter.   Without wage and the related information that was concealed that Defendant was required to provide to Plaintiff each pay period, pursuant to Minnesota law (Minn. Stat. § 181.032), Plaintiff was, is, and remains unable to accurately track his hours; locations worked; the proper rate of pay for each hour worked, and whether he was entitled to a bonus for accepting certain shifts.

203.   Despite repeated requests to his employer for payment of the unpaid wages, Defendants failed to make the payments that Plaintiff believed were owed. Defendants' further failed to provide to Plaintiff any documents or records as required under Minn. Stat. § 181.032.   Further, because every payment of wages made by Plaintiff's employer was not a full payment of the wages owed to Plaintiff, Minnesota Statute § 181.14, Subd. 2, provides that for each pay period that was late and/or that did not fully pay Plaintiff for all wages owed, Plaintiff is entitled to be paid an amount equal to his average daily wage for each day his wages were late up to a total of 15 days.   The money due and owing for the failure to promptly pay Plaintiff his wages it is believed in good faith by him to be in excess of $75,000.

## DEFENDANTS' FRAUDULENT SCHEME

204.   Defendant had a scheme of fraud whereby it lured Plaintiff into working for it with the fraudulent intent to collect payments from customers for work done by Plaintiff and not pay Plaintiff the wages that he expected as an employee so as to heighten the profit Defendant and defraud Plaintiff.  Material information including the number of regular hours worked, the number of overtime hours worked and the wages due were concealed from Plaintiff by Defendant.

205.   Defendant spoke with Plaintiff before he ever accepted the Defendant's offer.   Defendant intentionally, knowingly, and with scienter made false representations to Plaintiff as to him being an employee and to how much he would earn as wages.  Despite the promises the Defendant repeatedly paid him a less that was owed to him by Defendant.  The Defendant used a deceptive trade practice to induce Plaintiff to do work and then concealed from him information due and paid him less than promised or not at all.

206.   Defendant has intentionally, knowingly, and with scienter concealed and refused to disclose payment records and accounting for Plaintiff he in good faith believes the amount earned by him, the amount paid and the balance of wages that remained unpaid after each payment of wages and the penalties incurred are in excess of $75,000 due to the failure to pay the proper wage due him, failure to pay arrears, failure to pay for all wages earned and the untimely payment of wages as

well as failure to pay penalties due under Minnesota law that kept accumulating over time.

207.   To the date of this complaint Defendant still has not complied with federal or state law on payment of wages etc. and has not honored its promises to pay that were made to him by it to induce him to work for it

208.   The forgoing paragraphs are included herein.

209.   The Defendant committed fraud by concealment.   Defendant intentionally lied to the plaintiff and thereby by covering up material information on hours worked and money due him as set forth above in this complaint.

210.   Defendant did such concealment intentionally with scienter.

211.   Defendant concealed by its fraud a past or present material fact

212.   It did so with knowledge that Plaintiff did not know the truth and was ignorant of the concealed facts.

213.   It did the forgoing concealment with an intention to induce the plaintiff to act or to justify the Plaintiff to act;

214.   The plaintiff was induced to act or justified in acting in reliance on the concealment

215.   The plaintiff suffered damage proximately caused by the forgoing fraudulent concealment.

216.   Defendant   has   committed   fraudulent   nondisclosure   and

misrepresentation by omission.

217.   The Defendant has concealed a material fact

218.   The information concealed by Defendant was within the concealing party's knowledge;

219.   The Defendant knew that the acting party in this case Plaintiff did rely on this nondisclosure on the presumption that the fact does not exist;

220.   The Defendant who was the concealing party has a legal/equitable duty to communicate the fact.

221.   The Defendant had a duty to reveal the information concealed under both because of its representations but also because of existing federal and state law.

222.   There was a confidential or fiduciary duty relationship existing between the parties.

223.   The disclosure is necessary to clarify misleading information already disclosed;

224.   The Defendant has "special knowledge" of material facts to which the other Plaintiff does not have access.

225.   The clear facts as set forth above show:

- There were intentional, knowing with scienter false representations made by Defendant to Plaintiff about the job and how and how much he would be paid including how accounting would be handled, payment

for all time away from home, overtime, and travel time compensation, about how Defendant would handle his wages etc. and material aspects of these considerations were concealed by Defendant from Plaintiff;

- that these intentional, knowing with scienter concealments were fraudulent by Defendant;

- the fraudulent concealments were of a past or present fact,

- the fraudulent concealments from Plaintiff were material;

- and these fraudulent concealments by Defendant were susceptible to knowledge by the Defendant;

- Defendant knew these fraudulent concealments were being done falsely and to intentionally mislead the Plaintiff who relied upon the representations made to him by Defendant.

- the fraudulent concealments by Defendant were made with the intent to induce the Plaintiff to act;

- the Plaintiff was fraudulently induced to act by Defendants intentional, knowing with scienter fraudulent concealment;

- in justifiable reliance on the material information concealed from him by Defendant, including past and present facts, the Plaintiff was fraudulently induced to take the job and continued on the job;

- and Plaintiff suffered damages because of Defendant's fraudulent

concealment;

- The damages suffered by Plaintiff are attributable to the fraudulent concealment by Defendant.

226.   The Defendant's fraudulent concealment is the direct and proximate damage to Plaintiff.

227.   The Plaintiff has been damaged in excess of $75, 000.

**WHEREFORE,** Plaintiff prays for the following relief:

A.   Awarding Plaintiff judgment against Defendant for all damages he incurred pursuant to the Federal Fair Labor Standards Act.

B.   Awarding Plaintiff judgment against Defendant for all damages he incurred pursuant to the Minnesota Federal Fair Labor Standards Act.

C.   Ordering judgment for Plaintiff and against Defendant for breach of contract.

D.   Ordering judgment for Plaintiff and against Defendant for breach of good faith and fair dealing.

E.   Ordering judgment for Plaintiff and against Defendant for unjust enrichment.

F.   Ordering an accounting from Defendant and a judicial determination that the Defendant provide the explanation of all of the hours of services performed by Plaintiff for Defendants and the handling of payments to the Plaintiff

which should include an audit to adjust and properly submit payment due to Plaintiff;

G.    Ordering judgement and sanctions against Defendant for each violation by Defendant Minn. Stat. § 181.14, Subd. 2, including but not limited to full reimbursement, sanctions, interest and for Plaintiff's attorney's fees and costs incurred to enforce the Orders;

H.    Ordering judgment for Plaintiff and against Defendant for violation of Minn. Stat. §181.032, as amended.

I.    Ordering judgment for Plaintiff and against Defendant for violation of the Minnesota Whistleblower Act, Minn. Stat. §181.932, as amended.

J.    Ordering judgment for Plaintiff and against Defendant for fraud.

K.    Ordering judgment for Plaintiff and against Defendant for fraudulent concealment.

L.    Granting such other relief as may be just, with costs.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues triable by jury.

Date: July 13, 2022

NEFF LAW FIRM, PA

*/s/Fred L. Neff*

Fred L. Neff, #77355
One Corporate Plaza, Suite 165
7400 Metro Boulevard
Edina, MN 55439
Telephone: (952) 831-6555

Facsimile: (952) 831-2711
Email: info@neff-law-firm.com

*ATTORNEY FOR PLAINTIFF*

ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find that the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party or parties, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

Date: July 13, 2022

NEFF LAW FIRM, PA
*/s/Fred L. Neff*
Fred L. Neff, #77355
One Corporate Plaza, Suite 165
7400 Metro Boulevard
Edina, MN 55439
Telephone: (952) 831-6555
Facsimile: (952) 831-2711
Email: info@neff-law-firm.com

*ATTORNEY FOR PLAINTIFF*